# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| **ANTHONY C. PITRE** | **CIVIL ACTION NO. 08-1831** |
| **LA. DOC #475323** | |
| **VS.** | **SECTION P** |
| | |
| **JAMES LeBLANC, SECRETARY** | **JUDGE MELANÇON** |
| **LOUISIANA DEPARTMENT OF PUBLIC** | |
| **SAFETY AND CORRECTIONS** | **MAGISTRATE JUDGE HANNA** |

## REPORT AND RECOMMENDATION

Anthony C. Pitre ("Petitioner") is an inmate in the custody of Louisiana's Department of Public Safety and Corrections, incarcerated at the C. Paul Phelps Correctional Center in DeQuincy, Louisiana.  Currently before this Court is his *pro se* petition for writ of *habeas corpus* under 28 U.S.C. §2254.  Petitioner attacks his 2004 conviction for unauthorized use of a motor vehicle, his subsequent adjudication as an habitual offender, and the sentence imposed.

This matter was referred to the undersigned for review, report, and recommendations in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.  The Respondent has been served and has filed an answer and a certified copy of the state court records ("SCR").

For the following reasons, it is recommended that the petition be **DISMISSED WITH PREJUDICE**.

## *Background*

In December 2004, Petitioner was convicted of unauthorized use of a motor vehicle in the 15th Judicial District Court.[1]  He was subsequently adjudicated an habitual offender and sentenced to serve six years at hard labor.[2]  He moved for an appeal, and the Louisiana Appellate Project was appointed to represent him on appeal.  His appellate counsel filed an *Anders* brief and a motion to withdraw.[3]  Petitioner then filed a *pro se* appellate brief and argued six assignments of error.

While the appeal was pending, Petitioner filed a writ application asking the Court of Appeal to review the denial of his motion for reconsideration of his sentence.  The Third Circuit consolidated the motion with the writ application and treated the claim as another *pro se* assignment of error on appeal.[4]

The Third Circuit affirmed Petitioner's conviction, adjudication, and sentence, and it also granted his appellate counsel's motion to withdraw.[5]  Petitioner filed an application for rehearing,[6]

---

[1]      SCR Vol. 5, pp. 762-763; Vol. 6, pp. 919-920.

[2]      SCR Vol. 6, p. 918; 923-924.

[3]      *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 , 18 L.Ed.2d 493 (1967) provides that when appointed appellate counsel has determined that no non-frivolous issues and no ruling arguably supporting an appeal were found after a conscientious review of the record, counsel may file a brief establishing those facts and requesting permission of the court to withdraw from the case.

[4]      *State of Louisiana v. Anthony Craig Pitre*, 2005-405 (La. App. 3/1/2006), 924 So.2d 1176, 1186.

[5]      *State v. Pitre*, 2005-405 (La. App. 3 Cir. 3/1/2006), 924 So.2d 1176; *State of Louisiana v. Anthony Craig Pitre*, 2005-1184 (La. App. 3 Cir. 3/1/2006), 924 So.2d 1184.  [See also slip opinions, *Anthony C. Pitre v. Warden, Wade Correctional Center*, No. 6:07-cv-0354 ( *Pitre I*)**,** at Rec. Doc. 1-4, pp. 27-43].

[6]      *Pitre I*, Rec. Doc. 1-4, pp. 44-53.

-2-

which was denied.[7]  Petitioner then applied to the Louisiana Supreme Court for writs,[8] and he submitted a supplemental amendment to his writ application.[9]  Petitioner also filed a motion to correct and/or vacate his purportedly illegal sentence, which was immediately denied by the trial court.[10] Petitioner did not seek appellate review of the denial of his motion.  On December 15, 2006, the Louisiana Supreme Court denied Petitioner's writ application.[11]

Petitioner's first federal *habeas corpus* writ was filed in February 2007.[12]  After the United States Magistrate Judge observed that Petitioner's state court remedies had not been fully exhausted before the federal petition was filed, Petitioner filed a voluntary motion to dismiss his petition.[13]  The motion was granted, and the petition was dismissed without prejudice.[14]

Petitioner then filed an application for post-conviction relief in the 15th Judicial District Court.[15]  The application was denied,[16] and Petitioner sought writs in the Third Circuit Court of

---

[7]      *Pitre I*, Rec. Doc. 1-5, p. 1.

[8]      *Pitre I*, Rec. Doc. 1-5, pp. 2-18.

[9]      *Pitre I*, rec. doc. 1-5, pp. 19-26.

[10]      *Pitre I*, rec. doc. 1-5, pp. 42-48.

[11]      *State of Louisiana v. Anthony Craig Pitre*, 2006-11438 (La. 12/15/06), 944 So.2d 1283.  *Pitre I*, rec. doc. 1-5, p. 49.

[12]      *Pitre I*, rec. doc. 1-1, p. 9-10.

[13]      *Pitre I*, rec. doc. 6.

[14]      *Pitre I*, rec. doc. 8.

[15]      Rec. Doc. 1-3, p. 2; rec. doc. 6-1, pp. 46-77.

[16]      Rec. Doc. 6-1, pp. 42-44.

Appeal.[17]  The Third Circuit denied writs,[18] and Petitioner sought review in the Louisiana Supreme Court.[19]  The Supreme Court denied his writ application.[20]

Petitioner then filed the instant petition alleging the following grounds for relief:

(1)     "Detective Lori Roberts of the Houston Police Department intentionally violated petitioner's Fifth Amendment [protections against self-incrimination] when she continued with a functional equivalent of an interrogation after petitioner expressly invoked the safeguards of *Miranda*."[21]

(2)     "Detective Sonny Stutes of the Lafayette Parish Sheriff's Office intentionally violated petitioner's Fifth and Fourteenth Amendment [rights] when he influenced petitioner with a promise of a more lenient charge to elicit a statement."[22]

(3)     "The prosecutor violated petitioner's Due Process rights secured under the Fourteenth Amendment by committing prosecutorial misconduct when he made repeated inflammatory and prejudicial remarks in the presence of the jury in addition to inducing the minds of the jury with false and misleading misstatements of fact in evidence introduced at trial."[23]

---

[17]     Rec. Doc. 6-1, pp. 4, 6-32.

[18]     *State of Louisiana v. Anthony Craig Pitre*, No. KH 07-01281 at Rec. Doc. 6-1, p. 5.

[19]     Rec. Doc. 6-1, pp. 1-2.

[20]     Rec. Doc. 6-2, p. 3; see, also, *State of Louisiana ex rel. Anthony C. Pitre v. State of Louisiana*, 2008-0428 (La. 11/14/2008), 996 So.2d 1082.

[21]     Rec. Doc. 1-3, pp. 2-5.

[22]     *Id*., pp. 5-7.

[23]     *Id*., pp. 8-13.

(4)     Petitioner's trial counsel was ineffective for failing to move for a mistrial and or to object to the prosecutor's allegedly inflammatory and prejudicial comments during closing argument to the jury.  Trial counsel was also ineffective for failing to object to:  (1) the trial court's jury instructions on reasonable doubt; (2) the exclusion of prospective black jurors; (3) the prosecutor's cross examination of Petitioner; (4) an allegedly prejudicial surveillance video; and (5) use of an allegedly constitutionally infirm guilty plea in docket #99,966 as a predicate offense to enhance Petitioner's sentence in docket #101,384.[24]

(5)     "Petitioner was deprived of effective assistance of appellate counsel in violation of the Fourteenth Amendment when appellate counsel failed to raise (argue) or assign order to trial counsel's ineffective assistance of counsel then misstated facts in the trial record only to affirm petitioner's conviction and sentence in violation of *Anders*."[25]

(6)     "Petitioner's habitual offender 'plea' in docket number 101,384 was obtained in violation of the Fourteenth Amendment and does not represent a knowing, intelligent, or voluntary choice since it was based upon misrepresentations of trial counsel because the guilty plea used as a predicate offense in docket number 99,966 was also obtained in violation of the Fourteenth Amendment and cannot therefore be used to enhance the present sentence in docket number 101,384."[26]

Petitioner filed an amended petition and exhibits in May 2009, arguing that his claim concerning the prosecutor's closing argument was improperly denied as procedurally defaulted by

---

[24]     *Id.*, pp. 13-19.

[25]     *Id.*, pp. 20-26.

[26]     *Id.*, pp. 27-31.

the Third Circuit Court of Appeal.[27]  He then filed a declaration alleging that he had properly

exhausted all of his federal claims by fairly presenting them to the Louisiana Supreme Court.[28]  The

Respondent was served and filed an answer conceding both timeliness and the exhaustion of state

court remedies.[29]  In September 2009, Petitioner filed a "Motion for De Novo Review and

Evidentiary Hearing"[30] and a reply in opposition to Respondent's answer.[31]  Petitioner then filed a

supplemental reply,[32] a supplemental amendment concerning Claim Four,[33] another motion for leave

to supplement his petition,[34] as well as a request for prompt adjudication of his claims.[35]

### *Law and Analysis*

Louisiana courts addressed the merits of Claims 1, 2, 4, 5, and 6 and rejected them.  Claim

3 was rejected as procedurally defaulted.  Therefore, with respect to Claims 1-2 and 4-6, this Court

must utilize the standards for review set forth in 28 U.S.C. § 2254(d)(1) and (2).  Under those

standards, *habeas* relief is not available to a state prisoner on a claim that was adjudicated on the

merits in state court unless the adjudication of the claim:

---

[27]     Rec. Doc. 6.

[28]     Rec. Doc. 7.

[29]     Rec. Doc. 22.

[30]     Rec. Doc. 23.

[31]     Rec. Doc. 24.

[32]     Rec. Doc. 25.

[33]     Rec. Doc. 27.

[34]     Rec. Doc. 30.

[35]     Rec. Doc. 33.

> (1)     resulted in a decision that was contrary to, or involved an unreasonable
>          application of, clearly established federal law, as determined by the United
>          States Supreme Court; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the
>          facts in light of the evidence presented in the State court proceeding.

Questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), while pure questions of fact are reviewed under § 2254(d)(2).[36]  The state court's decision is contrary to federal law within the meaning of § 2254(d)(1) if the state court applies a rule contradicting the governing law set forth in the Supreme Court's cases, or the state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."[37]  A state court's factual findings constitute "an unreasonable application of clearly established" Supreme Court precedent if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."[38]  The inquiry into the issue of "unreasonableness" is objective.[39]  A state court's <u>incorrect</u> application of clearly established Supreme Court precedent is not enough to warrant federal *habeas* relief – the application must also be <u>unreasonable</u>.[40]

The state court's factual findings are presumed to be correct.[41]  Therefore, to obtain *habeas* relief on the ground that the state court's decision was based on an "unreasonable determination of

---

[36]     *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039, 121 S.Ct. 2001, 149 L.Ed.2d 1004 (2001).

[37]     *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

[38]     *Id.* at 407-08.

[39]     *Id.* at 409-10.

[40]     *Id.* at 410-12 (emphasis supplied).

[41]     28 U.S.C. § 2254(e)(1).

the facts in light of the evidence presented in the State court proceeding," a petitioner must rebut by

clear and convincing evidence the presumption that the state court's factual findings are correct.[42]

"[U]nder the deferential standard of AEDPA, [federal courts] review only the state court's

decision, not its reasoning or written opinion, to determine whether it is contrary to or a

misapplication of clearly established federal law."[43]  Even if the state court denied relief without

issuing a written order or otherwise specifying its reasons, federal courts must "(1) assume[ ] that

the state court applied the proper clearly established federal law; and (2) then determine[ ] whether

its decision was contrary to or an objectively unreasonable application of that law."[44]

All of Petitioner's claims (except the procedurally defaulted claim) were separately analyzed

under these standards.

**Claim One.**     ***Detective Roberts intentionally violated petitioner's Fifth Amendment rights when she continued with a functional equivalent of an interrogation after petitioner expressly invoked <u>Miranda</u>.***

Petitioner first claims that his Fifth Amendment rights were violated when Detective Roberts

continued to interrogate him after he invoked his right to remain silent.  This claim was litigated on

direct appeal.

In rejecting the claim, the Third Circuit made the following observations and conclusions:

In his Motion to Suppress, the defendant sought to exclude a statement he made to
Detective Lori Roberts in Houston.  The defendant contends that his testimony...
indicates that he was incoherent and 'nodding out' during the time he made the

---

[42]     See *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000).

[43]     *Catalan v. Cockrell*, 315 F .3d 491, 493 (5th Cir. 2002), citing *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*).

[44]     *Jordan v. Dretke*, 416 F.3d 363, 368 (5th Cir. 2005) (internal citations and marks omitted.)

statement....   The defendant also contends that it was undisputed that he had previously invoked his Fifth Amendment privilege and refused to sign a waiver of rights form.  He contends Detective Roberts took advantage of him and continued interrogating him by means of "misleading conversation."   The defendant also contends his will was overcome by sleep deprivation which was induced by heavy narcotic and alcohol use as was testified to by himself and Detective Roberts.

At the hearing on the motion to suppress, Detective Roberts testified that she informed the defendant of his rights and the defendant indicated he had nothing to say to her.  No waiver of rights form was presented to the defendant.  However, Detective Roberts indicated the defendant understood his rights.  Detective Roberts later told the defendant what he was being charged with in Louisiana and explained the extradition process.  During that time, the defendant told Detective Roberts, "I took that truck, but I didn't use a weapon. I don't know where they got that from, but I didn't have a weapon."

Detective Roberts testified that the defendant appeared upset and looked tired. However, no threats, promises, or force was used to obtain a statement from him.

The defendant testified that... [w]hen he was questioned by Detective Roberts, he said he was "dead to the world" and only understood "something about an extradition process." He had no recollection of Detective Roberts reading his rights and testified that he did not knowingly waive his rights. The defendant further testified that he clearly recalled telling Detective Roberts that he did not want to make a statement.

* * * * *

The defendant may have invoked his right to remain silent; however, Detective Roberts did not violate that right by informing the defendant of what he would be charged with in Louisiana and the extradition process.  The defendant waived his right to remain silent when he spontaneously blurted out the inculpatory statement.... Additionally, Detective Roberts never testified that the defendant was nodding out or that he was incoherent.  She did, however, testify that he was tired. Accordingly, the trial court applied the appropriate standard and its ruling is correct.[45]

The facts identified by the Court of Appeal, and the conclusions drawn therefrom by the Court, are consistent with the evidence adduced at the suppression hearing held prior to the trial.

At that hearing, Detective Roberts testified that she advised Petitioner of his rights, and he told her

---

[45]     *State v. Pitre,* 924 So.2d at 1180-81.

that he understood his rights.  He also told her that "he didn't have anything to say to me."[46] According to Roberts, Petitioner "appeared to be upset," but she could not tell whether he was under the influence of alcohol or drugs.  As she began explaining the extradition process to him, he said, "I took that truck, but I didn't use a weapon.  I don't know where they got that from, but I didn't have a weapon."[47]  Roberts further testified that she did not threaten the petitioner or make any promises to induce the statement.[48]  She further testified that petitioner explained his actions as follows:  "He said that he had just found out he was HIV positive, and he said he just flipped.  And I asked him where he was going... he said he didn't know.  He was just going."[49]  Under cross-examination, Detective Roberts observed that Petitioner appeared tired and upset.[50]

Petitioner also testified at the suppression hearing, stating that he was under the influence of drugs and alcohol during the time he interacted with Detective Roberts.[51]  He denied Detective Roberts's version of the events and testified instead that she continued to interrogate him while he was in a patrol car en route from the jail to the courthouse.[52]

At the end of the hearing, the trial judge ruled the statement admissible,[53] as noted by the Court of Appeal.

---

[46]     SCR, Vol. 4, pp. 559-561.

[47]     *Id.*, p. 561.

[48]     *Id.*, p. 562.

[49]     *Id.*

[50]     *Id.*, pp. 566-567.

[51]     *Id.*, p. 573.

[52]     *Id.*, p. 574.

[53]     *Id.*, pp. 609-610.

The Fifth Amendment protects a criminal defendant from self-incrimination and prohibits the prosecution from using statements "stemming from custodial interrogation... unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."[54] Nevertheless, "[v]olunteered statements of any kind are not barred by the Fifth Amendment" and do not implicate any *Miranda* considerations.[55] Furthermore, *Miranda* concerns are not triggered when officers merely take actions "normally attendant to arrest and custody."[56] Finally, "since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response."[57]

Here, the state trial and appellate courts both determined, as a matter of fact, that Detective Roberts observed Petitioner's right to remain silent after he invoked it, and both courts determined, as a matter of fact, that her subsequent statements to Petitioner concerning the extradition procedure were not the "functional equivalent" of an interrogation.   Therefore Petitioner's inculpatory statement was freely and voluntarily made and, thus, admissible.

---

[54]      *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[55]      *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

[56]      *Id.* at 301.

[57]      *Id.* at 301-02.

Petitioner bears the burden of proving that the findings and conclusions of the Louisiana courts were unreasonable.  Because Petitioner has not shown that these findings of fact and conclusions of law were unreasonable, Claim One must be dismissed.[58]

**Claim Two.**    *Detective Sonny Stutes of the Lafayette Parish Sheriff's Office intentionally violated petitioner's Fifth and Fourteenth Amendment Rights when he elicited a statement with a promise of a more lenient charge.*

Petitioner complains that the state trial and appellate courts made erroneous findings of fact, maintaining that his inculpatory statement to Detective Stutes was involuntary because Stutes promised leniency in return for the confession.  Petitioner litigated this claim on direct appeal, and the Third Circuit rejected the claim.

As noted by the appellate court, this claim was addressed in an evidentiary hearing held in November 2004.[59]  That court's recitation of the facts is supported by the transcript which shows the following:  Stutes testified that he advised petitioner of his *Miranda* rights[60] and that Petitioner then told Stutes that, on the night in question, Petitioner was very upset about having just discovered that he had been diagnosed with HIV; that he observed the victim pumping gas and approached him and asked him for a ride to his residence; that he directed the victim to drive to a remote location; and

---

[58] Finally, it must be noted that the petitioner testified at trial and admitted to having taken the victim's vehicle to Houston without his permission. See SCR, Vol. 5, pp. 717-18, "And I look at him and say, hey, man, look, I need to use your truck for a little while, and I pulled out some more crack. I had five to six rocks. And I says, look, how about this? He says, yeah, that's cool. When you'll be back? I says, I don't know. It won't be too long. And at that point, that's when I got in his vehicle and I left ... I do know I had permission for that vehicle, and when I drove it – well, when I went to Houston, it was without his knowledge that I went to Houston, but I had permission to use the vehicle..." Thus, any error in permitting the testimony of Det. Roberts was surely harmless beyond any doubt.

[59]        SCR, Vol. 4, pp. 583-618.

[60]        *Id.*, p. 586.

when he hesitated to leave the vehicle, the driver became nervous and unbuckled his seat belt; then Petitioner "put his hand under his shirt and told him to get out.  And he said before he could finish his sentence, the victim left.  And he then got into the driver's seat and drove the vehicle to Houston."[61]  Stutes denied either threatening or promising anything to petitioner in return for the confession.[62]  Petitioner, on the other hand, testified that when approached by Stutes, he invoked his right to remain silent and his right to an attorney.[63]  According to Petitioner, Stutes then left and returned approximated five to eight days later and promised that, in return for the Petitioner's cooperation, "he would guarantee me that I could get a misdemeanor unauthorized use of an automobile and be done with it and home soon."[64]  Petitioner testified that, but for these promises, he would not have made the statement to Stutes.[65]

On re-direct exam, Stutes denied having spoken to Petitioner on two separate occasions and again denied making any promises.[66]  Stutes also produced a waiver of rights form signed by the petitioner,[67] but Petitioner denied having signed the form.[68]

The Court of Appeal noted that the trial court denied the motion to suppress, stating:

---

[61]     *Id.*, p. 587.

[62]     *Id.*

[63]     *Id.*, p. 595.

[64]     *Id.*, p. 596.

[65]     *Id.*

[66]     *Id.*, p. 599.

[67]     *Id.*, p. 605.

[68]     *Id.*, p. 608.

I believe Detective Stutes' testimony was credible.  He indicated that he read the rights to Mr. Pitre and that Mr. Pitre then gave a statement in regard to some involvement in this offense.  I understand your argument was... that some promises were made to Mr. Pitre.  However, I find no evidence that undue promises were made by Detective Stutes.  And, therefore I am going to allow in evidence both the statement, as I ruled earlier, that was made in Houston, as well as the statement made here in Lafayette to Detective Stutes.[69]

Petitioner does not contend that the Louisiana courts unreasonably applied the law.  Instead, he takes issue with the state courts' findings of fact, which were based on credibility determinations made by the state district court at the suppression hearing.  A state court's factual findings and credibility determinations are presumed correct and may be rebutted only by the presentation of clear and convincing evidence to the contrary.[70]  "Clear and convincing evidence is 'that weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case.'"[71]  Put another way, a state trial court's credibility determination based on conflicting evidence is "virtually unreviewable" on *habeas* review by a federal court.[72]

Petitioner has the burden of proving that the state courts' findings of fact were unreasonable, but in this case, Petitioner has not shown that the state district court's credibility determinations were unreasonable.  Consequently, Petitioner is not entitled to relief on Claim Two.

---

[69]      *Id.*, p. 614.

[70]      See *Summers v. Dretke*, 431 F.3d 861, 871-72 (5th Cir. 2005), citing 28 U.S.C. § 2254(e)(1)).

[71]      *Shafer v. Army & Air Force Exchange Service*, 376 F.3d 386, 396 (5th Cir. 2004), quoting *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992) (in turn quoting *Cruzan by Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 285 n. 11, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990)).

[72]      *Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005), citing *Moore v. Johnson*, 194 F.3d 586, 605 (5th Cir. 1999) (in turn citing *Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)).

***Claim Three.  The prosecutor violated Petitioner's due process rights by making inflammatory and prejudicial remarks and false and misleading misstatements of facts in the presence of the jury.***

Petitioner raised a claim of prosecutorial misconduct as a *pro se* assignment of error on appeal, alleging that the prosecutor made false and misleading factual misstatements as well as inflammatory and prejudicial remarks in the presence of the jury.  The Third Circuit refused to reach the merits of this claim, noting that "[d]efense counsel failed to object to any comments made by the prosecutor during closing arguments.  Accordingly, the defendant did not preserve this issue for review."

The procedural default doctrine bars federal *habeas corpus* review when a state court declines to address a petitioner's federal claims because the petitioner has failed to follow a state procedural rule.[73]  This doctrine ensures that federal courts give proper respect to state procedural rules.[74]  "[I]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal *habeas* review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[75]

The doctrine presumes that a state court's express reliance on a procedural bar functions as an independent and adequate ground in support of the judgment.[76]  A petitioner can rebut this

---

[73]   *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991).

[74]   *Id.*

[75]   *Id.* at 750-51.

[76]   *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1996).

-15-

presumption by establishing that the procedural rule is not strictly or regularly followed,[77] but the burden is on the petitioner to show that the state did not strictly and regularly follow the procedural bar at the time pertinent to his state court action.[78]   In bearing the burden, the petitioner must demonstrate that the state failed to apply the procedural bar to claims which are identical or similar to the claims he raised.[79]

In resolving this claim, the Third Circuit relied on Louisiana's contemporaneous objection rule, which prohibits appellate review of errors that are not objected to at trial.[80]  The Third Circuit refused to reach the merits of the claim because Petitioner's counsel failed to object at trial to the allegedly improper statements of opposing counsel.  The Louisiana Supreme Court and all Louisiana appellate courts have consistently and uniformly applied this rule to bar review of such claims raised for the first time on appeal.[81]  Further, the United States Supreme Court has determined that the violation of a state's contemporaneous objection rule provides sufficient grounds to support dismissal of a subsequent federal *habeas* petition as procedurally defaulted.[82]

Because it is apparent that Louisiana courts regularly invoke the procedural default rule codified in La.C.Cr.P. art. 841, and because it is equally apparent that the Third Circuit properly

---

[77]      *Moore v. Roberts*, 83 F.3d 699 (5th Cir. 1996).

[78]      *Stokes v. Anderson*, 123 F.3d 840, 843 (5th Cir. 1999); *Amos v. Scott*, 61 F.3d 333, 342 (5th Cir. 1995); *Sones*, 61 F.3d at 416.

[79]      *Stokes*, 123 F.3d at 860; *Amos*, 61 F.3d at 340.

[80]      This rule is codified at La. C.Cr.P. art. 841.

[81]      *See State v. Manning,* 2003-1982 (La. 10/19/2004), 885 So.2d 1044; *State v. Sykes*, 2003-397 (La. App. 3 Cir. 10/08/2003), 857 So.2d 638; *State v. Bolden*, 03-0266 (La. App. 5 Cir. 07/29/2003), 852 So.2d 1050; *State v. Odoms*, 01-1033 (La. App. 5 Cir. 03/26/2002), 815 So.2d 2004; *State v. Bridgewater*, 2000-1529 (La. 01/05/2002), 823 So.2d 877; *State v. Wilson*, 2000-1736 (La. App. 4 Cir. 11/14/2001), 803 So.2d 102.

[82]      *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1984).

invoked the rule when it declined review of this claim, federal *habeas corpus* review of Claim 3 is prohibited by the procedural default doctrine.  Furthermore, Petitioner cannot establish that either exception to the applicability of the doctrine is triggered in this case.

Federal *habeas* review of this procedurally defaulted claim is barred unless Petitioner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.[83]  Here, none of these exceptions has been established.

### a.      Cause and Prejudice

"Cause" in the context of a procedural default refers to an impediment <u>external</u> to the defense, such as the factual or legal basis for a claim not being reasonably available to counsel or some sort of interference by officials that made compliance impracticable.[84]   In addition to establishing cause, a procedurally defaulted *habeas* petitioner must show actual prejudice to overcome the procedural bar.[85]   "<u>The movant makes this showing where he demonstrates that, but for the error, he might not have been convicted</u>."[86]   In other words, actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different.[87]

---

[83]      *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

[84]      *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

[85]      *United States v. Guerra*, 94 F.3d 989, 994 (5th Cir. 1996).

[86]      *Id.* [emphasis added); see also *Pickney v. Cain*, 337 F.3d 542, 545 (5th Cir. 2003).

[87]      *Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir. 2000).

Here, Petitioner claims that the cause of his default was the ineffective assistance rendered by his trial counsel.  He also argues a substantive claim of ineffective assistance of counsel, which is addressed below.  As shown in the following discussion of Petitioner's ineffective assistance of counsel claims, Petitioner is unable to demonstrate that his counsel's failure to object to the closing argument amounted to deficient performance or that the failure to object resulted in any prejudice.  Since he cannot show cause and prejudice, Petitioner is not entitled to federal review of his procedurally defaulted claim.

### b.      *Miscarriage of Justice*

To avoid a procedural default by showing a fundamental miscarriage of justice, Petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."[88]  Thus, he must allege that, as a factual matter, he did not commit the crime.[89]  In other words, the petitioner must make a "colorable showing of factual innocence."[90]

In this case, however, Petitioner cannot show actual innocence.  Petitioner was convicted of unauthorized use of a motor vehicle.  This crime is defined as "the intentional taking or use of a motor vehicle which belongs to another, either without the other's consent or by means of fraudulent

---

[88]      *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *Glover v. Cain*, 128 F.3d 900, 904 (5th Cir. 1997).

[89]      *Corwin v. Johnson*, 150 F.3d 467, 473 (5th Cir. 1998); *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995).

[90]      *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.), *cert. denied*, 519 U.S. 1017, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996), quoting *McClesky v. Zant*, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993).

conduct, practices, or representations, but without the intention to deprive the other of the motor vehicle permanently."[91]   As shown previously, Petitioner testified on his own behalf and stated:

> [H]ey, man, look, I need to use your truck for a little while, and I pulled out some crack.... He says, yeah, that's cool.  When you'll be back?  I says, I don't know.  It won't be too long.  And at that point, that's when I got in his vehicle and I left....  I do know I had permission for that vehicle, and when I drove it – well, when I went to Houston, it was without his knowledge that I went to Houston, but I had permission to use the vehicle."[92]

Petitioner's testimony, standing alone, proved each element of the offense.  Petitioner's version of the events indicates that Petitioner sought the use of the victim's truck for only a short period of time since Petitioner obtained the use of the truck based on his assertion that "[i]t won't be too long..."  But Petitioner did not return the truck within a short period of time.  Instead, he drove to Houston without the victim's knowledge, and certainly without the victim's consent.  Consequently, Petitioner cannot avoid procedural default of his claims on the grounds of actual innocence.

**Claim Four.   *Petitioner was deprived of effective assistance of trial counsel in violation of the Sixth Amendment when counsel failed to object to and preserve for appeal obvious and significant trial errors.***

Clearly established federal law provides that, in order to prevail on an ineffective assistance of counsel claim, a *habeas* petitioner must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[93]   An attorney's performance is deficient if it "falls below an objective standard of reasonableness" as measured by professional norms.[94]   In

---

[91]   La. R.S.14:68.4.

[92]   SCR, Vol. 5, pp. 717-718.

[93]   *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80, L.Ed.2d 674 (1984).

[94]   *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052.

reviewing such a claim, this Court must determine "whether there is a gap between what counsel actually did and what a reasonable attorney would have done under the circumstances."[95]   In so doing, the Court must "eliminate the distorting effects of hindsight,"[96] and may not assume deficient performance based upon the client's disagreement with the attorney's strategic choices.[97]

To establish prejudice, the *habeas* petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[98]   A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial.[99]   Ineffective assistance of counsel claims present mixed question of law and fact.[100]

In this case, Petitioner argues that his trial counsel was ineffective and points to a number of instances to support that claim.   He raised these same claims in his state court application for post-conviction relief.   The Louisiana courts addressed the merits of the claims.   In each instance, the courts determined that Petitioner "offered nothing to show that his counsel's performance fell below an objective standard of reasonableness under prevailing norms, or that his counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect."[101]   Since the ineffective assistance of counsel claims were adjudicated on the merits, the

---

[95]     *Neal v. Puckett*, 286 F.3d at 236.

[96]     *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

[97]     *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999).

[98]     *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

[99]     *Id.*

[100]    *Kitchens v. Johnson*, 190 F.3d 698, 700-01 (5th Cir. 1999).

[101]    Rec. Doc. 6-1, p. 44.

deferential standards of the AEDPA must be applied.  Each instance of alleged deficient performance must therefore be analyzed using the standards articulated above.

> **a.    Counsel failed to object or move for a mistrial when the prosecutor made inflammatory and prejudicial comments during closing argument to the jury, when the prosecutor argued his personal beliefs as to the guilt and credibility of petitioner and his witness, and misled the jury with false and misleading misstatements of facts in evidence.**

Petitioner claims that the prosecutor made impermissibly inflammatory and prejudicial comments during his closing argument, particularly with regard to the credibility of the witnesses. The prosecutor, in his closing argument, stated,

> To back up [Petitioner's] story, he finds Ms. Demourelle.  How he found her and how he convinced her is beyond me, but you need to look at her story very carefully, because they are obviously all a pack of lies.  And the reason I say that, you consider first, she's a drug addict.  She's been in relapse for... 10 or 11 months.  You have to consider what her motives are.  She's friends with the defendant.  She wants to help him.  She told you that, and I believe that she wants to help him.  She wants to help him to the point that she got up there and she lied.

> And one way that you know that she lied is, in this little story that she concocted... about the film.  ...[R]emember, she said she went into the store right about the time they were there while you were watching that film and she bought cigarettes?  Did you ever see her on the film in the store buying cigarettes?  No, you didn't.  That was a lie.  That she met them on the side by the telephone, that's another lie.  They can't even keep it straight.  He says where they came in contact was when he was fueling his truck.  Now, he didn't fuel his truck at the telephones.  The pump is out in front. You can see that from the film.

> So one thing I do agree with [defense counsel] Mr. Register, he said it's credibility. That's what it is. Do you believe these people, or do you believe the defendant?  He's guilty, and you should find him guilty of both charges.[102]

---

[102]     SCR, Vol. 5, pp. 737-738.

Petitioner maintains that his attorney should have objected to this argument.  However, he has not shown that the argument was improper, since "a prosecutor may recite to the jury those inferences and conclusions he wishes them to draw from the evidence so long as those inferences are grounded upon the evidence."[103]  This includes inferring or concluding that the defendant or his witness are liars.[104]  Furthermore, the failure to assert a meritless or futile objection "cannot be grounds for a finding of deficient performance."[105]

At trial, Petitioner and his witness testified to a particular set of facts which were at odds with the victim's testimony.  One must reasonably infer from the conflicting testimony that someone was lying.  The prosecutor's statement was therefore based upon a reasonable inference from the evidence rather than personal opinion.  The statement was not improper.  Consequently, Petitioner's counsel's failure to object to the closing argument did not amount to deficient performance.

Even if the failure to object could be classified as deficient performance, Petitioner has shown no prejudice from the lack of objection.  He has not demonstrated that, but for this alleged deficiency of counsel, a reasonable probability existed that the outcome of the trial would have different.  Petitioner cannot show prejudice for the following reasons.  As noted previously, Petitioner was convicted of unauthorized use of a motor vehicle, and Petitioner testified that he represented to the victim that he intended to use the victim's truck for a short time but, instead, drove the truck to Houston without the victim's knowledge or consent.[106]  The Petitioner's testimony, with

---

[103]     *United States v. Loney*, 959 F.2d 1332, 1343 (5th Cir. 1992).

[104]     *Id.*

[105]     *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997).

[106]     SCR, Vol. 5, pp. 717-718.

-22-

nothing more, proved each element of the offense.  The jury, having heard his testimony, could have

concluded that the victim gave permission to use the truck "for a little while" but not for a road-trip

to Houston.  Under those circumstances it is clear beyond any doubt that Petitioner's counsel's

failure to object to the prosecutor's closing argument did not prejudice Petitioner.

Finally, any possible harm from the prosecutor's argument was cured by the trial court's

instruction to the jury that statements by counsel do not constitute evidence.[107]  At the conclusion

of the closing arguments, the Court instructed the jury as follows:

> Also keep in mind that any statements made by the attorneys at any time during the
> trial are not evidence.  In the opening statements, the attorneys were permitted to tell
> you the facts they expected to prove.  In closing arguments, they were permitted to
> present for your consideration their contentions regarding what they believe the
> evidence has shown or not shown and what conclusions they think may be drawn
> from the evidence.  But, again, those opening statements and closing arguments are
> not evidence.[108]

A jury is presumed to have followed the court's instructions.[109]  Therefore, it is unlikely that the

prosecutor's argument had any effect on the verdict.

In short, Petitioner has shown neither deficient performance nor prejudice.  That was the state

court's conclusion, and Petitioner has not shown that the conclusion was erroneous or unreasonable.

> **b.    Trial counsel failed to object to the trial court's instructions on reasonable doubt.**

Petitioner claims that his attorney's failure to object to the jury charge on reasonable doubt

amounted to ineffective assistance.  He candidly admits, however, that he is unable to cite the portion

---

[107]    *Nethery v. Collins*, 993 F.2d 1154, 1159 (5th Cir. 1993).

[108]    SCR, Vol. 5, p. 750.

[109]    *Greer v. Miller*, 483 U.S. 756, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987).

of the record that contains the allegedly objectionable charge.  At trial, the Court instructed the jury

as follows with regard to reasonable doubt:

> [T]he defendant is presumed to be innocent until each and every element of the crime
> necessary to constitute his guilt is proven beyond a reasonable doubt.  The defendant
> is not required to prove that he is innocent; thus, the defendant begins the trial with
> a clean slate.  The burden is upon the State to prove the defendant's guilt beyond a
> reasonable doubt.
>
> In considering the evidence, you must give the defendant the benefit of every
> reasonable doubt arising out of the evidence or out of the lace of evidence. If you are
> not convinced of the guilt of the defendant beyond a reasonable doubt, you must find
> him not guilty.
>
> While the State must prove guilt beyond a reasonable doubt, it does not have to prove
> guilt beyond all possible doubt. Reasonable doubt is reason based upon – is doubt
> based upon reason and common sense. Reasonable doubt is present when, after you
> consider all of the evidence, you cannot say that you are firmly convinced of the truth
> of the charge.[110]

Contrary to Petitioner's assertion, this instruction does not violate *Cage v. Louisiana*,[111] and

it is in accord with well-established federal law.[112]  The Louisiana state court that reviewed

Petitioner's claim for post-conviction relief reached that conclusion, finding that his counsel's failure

to object to this otherwise proper and appropriate charge did not constitute deficient performance.

Again, Petitioner has not shown that the Louisiana courts' decisions in this regard were either wrong

or unreasonable.

---

[110]     SCR, Vol. 5, p. 748.

[111]     498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d. 339 (1990).

[112]     See *Cage, supra*; see also *Mitchell v. Cain*, 189 F.3d 469 (5th Cir. 1999).

      ***c.      Counsel did not challenge the prosecutor's exclusion of black jurors.***

Petitioner next argues that his counsel was ineffective because he failed to challenge the prosecutor's exclusion of African-American jurors.  In disposing of this claim, the state court simply noted, "there is no evidence in the record of any effort to exclude black jurors...."[113]  That indeed, is the case.  Petitioner points to no instance in the record to establish the purposeful exclusion of African-American jurors; therefore, he cannot establish that counsel's failure to interpose a *Batson* challenge amounted to ineffective assistance of counsel.  Petitioner has failed to demonstrate that the state courts' rulings were erroneous or unreasonable.  For that reason, this claim lacks merit.

      ***d.      Counsel did not object when the prosecutor questioned petitioner regarding petitioner's drug habits, failures with regard to drug rehabilitation, drug dependency, and arrests.***

Petitioner claims that his counsel was ineffective for failing to object to the prosecutor's questioning Petitioner concerning drug related matters.  The state court found no merit to this claim, stating:  "the cross examination by the prosecutor was within the proper parameters of cross examination and in accordance with the rules of evidence."[114]

The record demonstrates that Petitioner's attorney questioned petitioner about his convictions, drug use, and his attempts to rehabilitate himself.[115] On cross examination, the prosecutor asked him about the simple burglary conviction that Petitioner omitted when testifying on direct.  The prosecutor also questioned him about his efforts to obtain treatment for his drug

---

[113]     Rec. Doc. 6-1, p. 43.

[114]     Rec. Doc. 6-1, p. 43.

[115]     SCR, Vol. 5, pp. 713-714.

problem.[116]   Contrary to his assertion, Petitioner was not questioned concerning arrests or drug habits.  Counsel was not ineffective for failing to object to the state's cross examination of Petitioner because there was nothing objectionable about the questions asked.  That was the conclusion of the state court, and Petitioner has not shown that the state court's ruling was unreasonable.

### e.   Counsel failed to object to consecutive sentences.

Petitioner maintains that his counsel was ineffective for failing to object to the imposition of a sentence that was consecutive to his probation revocation sentence.  In this instance, the trial court correctly noted that Petitioner's claim of excessiveness of sentence had been resolved on appeal.[117]   Petitioner argued that his sentence was excessive, and the Court of Appeal found:

> The defendant received one year more than the minimum sentence allowed in this matter.  Further, the trial court noted the defendant committed the instant offense two weeks after he had been placed on probation.  Therefore, the sentence imposed is not excessive and the trial court properly denied the defendant's Motion to Reconsider Sentence.[118]

Further, as Petitioner pointed out, Louisiana law mandates that when probation is revoked for the commission of another crime in Louisiana, the probation revocation sentence and the new sentence are to be served consecutively unless otherwise specifically ordered by the court ordering revocation.[119]   According to the revocation hearing transcript and the court's minutes in case number 99,966, Petitioner's probation was revoked on January 8, 2007.  Petitioner was ordered to serve the

---

[116]    *Id.*, pp. 726-728.

[117]    Rec. Doc. 6-1, p. 43.

[118]    *State v. Pitre*, 924 So.2d at 1183-84 [citations omitted].

[119]    See La. C.Cr.P. art. 901(C)(2).

suspended sentence in that case, and the judge specifically ordered that the sentence be consecutive to any other sentence Petitioner might be serving.[120]  Petitioner correctly notes that, under Louisiana law, the judge presiding over his probation revocation was authorized to determine whether Petitioner would be required to serve consecutive or concurrent sentences.  Because that judge ordered his sentence to be consecutive to the instant conviction, Petitioner can show no prejudice resulting from the trial judge's order.  Therefore, the failure of Petitioner's counsel to object to the consecutive nature of the sentence did not amount to ineffective assistance.

> **f.      Counsel failed to move for the suppression of the truck stop surveillance tape.**

Petitioner argues that his counsel was ineffective for failing to move for suppression of surveillance tape from the truck stop where he encountered the victim.  The state court rejected this claim, stating: " the petitioner provides no basis upon which the video surveillance footage could be suppressed."[121]  Petitioner again offers no grounds that would have warranted the suppression of the videotape.  Further, the videotape, when shown to the jury, revealed only the presence of the victim's truck and a "subject... standing near the vehicle that fits the physical and clothing description" given by the government witness.[122]

Because Petitioner admitted to having approached the victim while the victim was in the process of pumping gas at the truck stop,[123] it is unclear how the introduction of the videotape might

---

[120]      SCR, Vol. 1, p. 132; pp. 122-129.

[121]      Rec. Doc. 6-1, p. 43.

[122]      SCR, Vol. 5, p. 678.

[123]      SCR, Vol. 5, p. 715.

have had any prejudicial effect.  Accordingly, counsel's failure to object to the videotape did not

constitute ineffective assistance of counsel.  The state court's findings in this regard have not been

shown to be unreasonable.

**Claim Five.**   ***Petitioner was deprived of effective assistance of appellate counsel in violation of the Fourteenth Amendment when appellate counsel failed to raise an issue regarding trial counsel's ineffective assistance.***

On appeal, Petitioner raised a claim alleging that his appellate counsel was ineffective.  The

Court of Appeal rejected the claim as follows:

> [D]efendant contends counsel failed to argue any issues of significance and said the appeal was frivolous then filed an *Anders* brief asking the court to permit him to withdraw as counsel proving constructive denial of counsel, which violates his Sixth Amendment rights.

> Under the standard for ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a reviewing court must reverse a conviction if the defendant establishes that counsel's performance was deficient, and he was prejudiced by the deficiency.

> Even if appellate counsel's performance has been deficient, the defendant has not been prejudiced as a result. As discussed above, a review of the record fails to disclose any non-frivolous appealable issues. The issues that the defendant raises have no merit.

> Accordingly, this assignment is without merit.[124]

Each court that considered these claims held that Petitioner simply had no meritorious

grounds for either an appeal, post-conviction relief, or *habeas corpus* relief.  Because Petitioner's

claim of ineffective assistance of appellate counsel was addressed on the merits, he can only prevail

---

[124]      *State v. Pitre,* 924 So.2d at 1182-83.

by showing that the state court's judgment was unreasonable.  This he has not done.  This claim

lacks merit.

**Claim Six.**     *Petitioner's habitual offender plea in docket number 101,384 was obtained in*
             *violation of the Fourteenth Amendment because the guilty plea in docket number*
             *99,966, which was used as a predicate offense, was also obtained in violation of the*
             *Fourteenth Amendment and cannot be used to enhance the later sentence.*

Petitioner contends that "[d]uring petitioner's habitual offender proceeding in docket number

101,384, his trial counsel... failed to object to or perform any investigation whatsoever in regards to

the constitutionality of the guilty plea in docket number 99,966 which was used as a predicate

offense to enhance petitioner's present sentence in docket number 101,384." He also argued that his

counsel advised Petitioner to admit to the habitual offender charge, notwithstanding Petitioner's

assertion that the predicate felony conviction was constitutionally infirm.

This claim was raised in Petitioner's application for post-conviction relief filed in case

number 101,384.  The claim was rejected as follows:

> As to petitioner's prior conviction under Docket #99966... which served as a
> predicate for his habitual offender adjudication, petitioner has already made
> application for and has been denied post conviction relief.  The allegations he
> contends should have been made by his trial counsel to disqualify that conviction as
> a predicate offense have been litigated.  Petitioner filed for Post-Conviction Relief
> in Docket #99966 and was granted a hearing thereon.  In that proceeding, he
> contended the plea he had entered was not voluntary, on the same grounds he alleges
> herein.  His Application for Post-Conviction Relief was denied in Docket  #99966
> on July 11, 2005.  The petitioner also sought a Writ of Review from that ruling.  His
> writ was denied on September 2, 2005 by the Third Circuit Court of Appeal.  The
> collateral attack on the conviction in Docket #99966 which petitioner claims his
> attorney should have made has been fully litigated and found to be without merit.[125]

---

[125]     Rec. doc. 6-1, p. 43.

The record substantiates the trial court's findings.  Petitioner unsuccessfully attacked the voluntariness of his guilty plea in Docket #99966 in post-conviction actions filed in the 15th Judicial District Court, the Third Circuit Court of Appeal, and ultimately the Louisiana Supreme Court.[126] He has not demonstrated that his guilty plea to the predicate felony was involuntary or otherwise defective.  Further, the transcript of the plea has been provided, and the record affirmatively demonstrates that Petitioner was advised of his rights, advised of the nature of the offense he was charged with, and advised of the maximum penalty provided for the offense.  Finally, prior to accepting Petitioner's plea, the trial judge inquired,

> Written on your plea form is the following.  You are to serve ten years at hard labor. That sentence is suspended.  You are placed on active supervised probation for five years under the following special conditions.  You are to pay a fine of $200, together with court costs in the amount of $161, together with a fee of $300 to the Indigent Defender's Office for its representation of you, all by May 1, 2004.  You are also to pay restitution in the amount of $928.11, and I understand that's for more charges than this one.  You also are to have no contact with the victim.
>
> Is that what you expected to receive as a sentence today, Sir?

To which petitioner replied, "Yes, Sir."[127]

Clearly, the predicate conviction was valid, and Petitioner has not successfully attacked its validity.  Therefore, his counsel's failure to do so cannot be deemed deficient or prejudicial.  Finally, Petitioner cannot demonstrate that counsel's advice to admit to being a second felony offender was deficient or prejudicial given the fact that a denial would have been futile in light of the

---

[126] See SCR Vols. 1 and 2, *State v. Pitre*, Docket #99966; see also *State ex rel. Anthony C. Pitre v. State*, 2008-0428 (La. 11/14/2008), 996 So.2d 1082.

[127] SCR, Vol. 1, pp. 44-45.

overwhelming evidence demonstrating that Petitioner was, in fact, a second felony offender.  This he has not done.

Petitioner has once again failed to demonstrate that the state court's denial of his claim was unreasonable.  For that reason, he is not entitled to relief.

### *Conclusion and Recommendation*

Petitioner has the burden of proving that he is entitled to *habeas corpus* relief.  For the reasons set forth above, Petitioner has failed to show that the state courts' adjudications of Claims 1, 2, 4, 5, and 6 were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.  Additionally, Claim 3 was properly dismissed as procedurally defaulted, and Petitioner has shown neither cause nor prejudice, nor has he demonstrated that a miscarriage of justice would ensue should the court decline review of the merits of his defaulted claim.  Therefore,

**IT IS RECOMMENDED** that this petition for *habeas corpus* be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this report and recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with a copy of any objections or response to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this report and recommendation within fourteen days following the date of

its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party

from attacking either the factual findings or the legal conclusions accepted by the District Court,

except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79

F.3d 1415 (5th Cir. 1996).

    Signed at Lafayette, Louisiana, this 6th day of May, 2010.


Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)